Counsel will have to tell me how to pronounce the name. I pronounce it DeBons. DeBons. I figure out if I'm incorrect, I just stay incorrect for the remainder. DeBons, it's DeBons. It's new bone. And it fits nicely into the fabric of the narrative. I like that. Dem broken bones.  And you're? Okay. Good morning, Your Honors. Please, this is the Court. My name is Mark Ackerman. I'm a law firm of Brodsky & Smith. I represent the appellant, Eugene DeBons. I'd like to attempt to reserve three minutes of my time for rebuttal. We believe that the district court erred in dismissing plaintiff's complaint on preemption grounds. We believe the facts present the court with a situation that has never been decided in the various preemption cases that have gone up to the Supreme Court, that have been heard by the Ninth Circuit and other circuit courts. The claim hinges on federal law, right? I'm sorry? The claim hinges on federal law. No. We do not believe that the claim hinges on federal law. Okay. Explain to me why not. We believe that the claims are state law claims that relate to the fact that Globus provided a medical device that was not safe and effective for use in the manner that it was used. I thought the claim was that it wasn't registered. No. It is certainly referenced throughout that this was never approved by the FDA. This is a situation where the company, one, did not pursue a PMA, a pre-market assessment of the device, and then also did not initially seek 510K. Well, see, the more you talk about that stuff, the more it sounds like it's preempted. No. If we strip all of that stuff out of the complaint, if we strip all of the allegations about failure to register, failure to comply with the FDA, failure to do a pre, you know, one of these things, pre things, what's left of the complaint? Well, so if the FDA, if the MDAs did not exist, if the FDA did not exist, and there was a procedure You're restating the question. No. The clock is ticking. I'm saying let's not restate the question in a way that's different from what I stated. I'm not positing there is no FDA. I don't want to talk about that. I'm asking you what happens if we take all of the stuff in your complaint that references federal registration out? Okay. Just take it, you know, take a big black marker and mark it out. What's left of your complaint? That Globus provided a medical device that was not safe and effective for use in the Based on what? That is a conclusory statement that is made throughout the complaint, but there is no evidence in the, there's no allegation in the complaint that your client sustained any injury, that the product didn't work, and that it's not safe. And there's no evidence anyone else suffered from that, and you're bringing this as a purported class action. The injury to and the damages to the client are based upon the fact that a not safe device was placed. You're putting the premise in the issue. You're saying it's not safe because it wasn't FDA approved, but you don't have any evidence that it actually failed or caused harm or did anything to the plaintiff. There's nothing, there are no allegations in the complaint to that effect. The flip side is likewise true, that there is no evidence that it is a safe and effective medical device, and it being implanted into my. So what? I mean, you are the plaintiff. You have to make allegations that will pass. That is true. That is unsafe. So the fact that there's no evidence, they don't have to do anything at this stage. They don't have to provide any evidence at all or even allegations. You are facing a motion to dismiss. Agreed. So your complaint, we just stripped your complaint of all the stuff referencing the FDA and federal law. Yes. What have you got left other than a bare allegation saying this thing is unsafe? Well, we also have an allegation that we entered into a contract, what we believe they're a third party beneficiary of, again, for a product that is safe and effective for the intended use. And folks can contract for anything that is not illegal to do. Okay. I'm sorry. Just what is the injury to your client? I'm sorry. What is the injury to your client and the other members of the class? The injury to my client is the fact that a product that has not been approved and has not been proven in any regard to be safe and effective was utilized in an operation. And he would like to take that out. But has it caused any injury? Oh, you want to take it out. He wants to take it out.  Well, the injury and the damage, the injury is that a product that has not been determined to be safe and effective has been placed into him. The damage is that he wants the restitution to take that product out and to do it with an FDA-approved item. And while we have four. I'm sorry. It has not been. You used a passive. It has not been deemed safe and effective by whom? By any entity. Since when are you entitled to have a product that has been deemed safe and effective? Is the common law of California entitled you to a product that has been deemed by somebody to be safe and effective? I believe that there is. I cannot point your Honor to a case with respect to that issue. Well, that's how you win cases, but not by pretending your personal belief, but by giving us a citation. What is it that entitles you to have a product that has been deemed by somebody to be safe and effective? Well. I mean, it's one thing to say it's not safe and effective and here's the evidence or here's the damage I have suffered, here's the injury I have suffered, but you fall for nothing like that. Your entire case hinges on the fact that this has been approved by the FDA. And that brings us right up against the preemption issue. It can bring us up. Is the product not working? Like is he suffering pain from it? Is it? We have not made an allegation with respect to any pain that he is suffering as a result of it. Is it psychological? He is concerned with respect to the item that was used in his surgery and wants to have it removed. So it's an emotional injury? Yes. But that the damage is calculable with respect to what it would cost. It could be determined with respect to doing this. I would like to respond, if I could, just to you said we're up against preemption. And I do think I understand the Court's desire with respect to the hypothetical it presented. However, I do believe that there are cases. The Bosch v. Stryker case out of the Seventh Circuit, the Hughes v. Boston Scientific case out of the Fifth Circuit, both cited by McClellan v. Ifo in this circuit, that have indicated that you may utilize certain aspects of violation of the FDA with respect to claims regarding preemption. In Stryker, they talked about the definition of an adulterated product. So I don't believe, Your Honors, that the distinction is as you have indicated. I believe that preemption does not apply here for the reasons that we've stated. I only have a little bit of time. I'm going to respond to your question and seek to reserve the rebuttal. Well, I want to get back to the one area where I think there may be some issue here. You have expressed a claim for breach of an express contract. And it is feasible that someone could contract beyond the scope of the FDA requirements if the hospital had entered into a contract with Globus Medical saying, you will provide us with an FDA-approved product. And the contract said that, and they agreed to that term and provided a product that was not FDA-approved. Potentially you'd have a breach of contract claim if that was material, and we'll assume it would have been. You have alleged or asserted in your third amended complaint now about a contract, but there's never been a contract identified, a specific contract that actually states that as a term of the contract, much less identifies your particular client as a beneficiary. Could you tell me what evidence there is to support that claim? We are not a party to the contract. There is a contract between Globus and the hospital. This was dismissed at a stage prior to our ability to obtain through discovery that contract. Are you suggesting you're a third-party beneficiary to that contract? Yes, we are. And does that contract have a provision that they'll only use FDA-approved products? I missed the last part of what you said. Does the contract have a provision that the doctor will only use FDA-approved products? We stand in here. We do not know that. Okay. And then you have negligence claims. Is there a malpractice claim in here? No, not a malpractice claim. We believe that there was a duty to provide a product that was safe and effective, and they breached that, and there's been an injury, and there are damages associated with that. We believe that when you go back to the preemption line of cases, and you have a situation here where Globus did not seek, did not receive a PMA, and did not receive substantial equivalency, that that provides no basis for express preemption, and we believe that our claims are not so wrapped into the federal element of the FDA, of the FDCA and the MDAs, that there should be implied preemption. Do you agree that if they had gotten premarket, not the premarket approval, the substantial equivalent approval, that the FDA in the context of doing that makes no determination about the safety and effectiveness of the product, but rather says it's substantially equivalent to something that was on the market before the enactment of the MDAs, and that product hasn't been reviewed by anybody to be safe and effective? And so even if they had that, it wouldn't necessarily conclude that the lack of it does not, therefore, lead to the assumption that it's not safe and effective. I understand your point. I believe that, yes, there is a rigor associated with PMA, and it's all written as the 1,200 hours that the FDA goes through. There is rigor associated with substantial equivalency. You're talking about identifying a product that existed on the market as of 1976, 30 years later. So when you're talking about, even though you're right as to the reference to safety and efficacy, you're talking about finding that it's substantially equivalent to a product that has been on the market for, in this instance, would have been 30 years, performing on the market, and presumably would have had no issues. So there is, in my mind, an underlying element that there is, that can be relied upon in substantial equivalency. And here, what you had was when they finished, when the FDA finally came to them and said, you're still selling this, we told you not to, they took it off the market. They decided it's not worth it, we're not going to go and deal with a PMA, we couldn't get substantial equivalency. So for the reasons that we've set forth, I'm well over my time now. We believe that it was improper for the court to dismiss the matter. Thank you. Thank you. Good morning, Your Honors. Paul Killian for the Appellee Globus Medical. There is a misperception as to what this product is, and let me address that right away. It's set forth in paragraph 15 of the complaint. This is a 100% human tissue product. It's not a device. And so who do you think is confused? The plaintiff is, because they're describing it.  We are deciding the case. Do you think we're confused? No, I have not seen any indication. So why are you starting with this? Why are you talking about this? Because it goes to the remedy argument that was just made that they want this product removed. There's nothing left in Mr. Dubon's body regarding this product. It's a 100% allograft human tissue product. It's bone. It's turned into bone. It's been completely metabolized. That's the beauty of the product. So it's not a device. There's nothing to remove. There's no allegation of the- How does this bear on any of the issues presented to us? It goes to whether or not there's an injury. And that bears on what? There is no injury. That bears on what of the issues? Which of the issues on appeal? It bears on the argument that there is an alternative state basis for this claim. Okay. I don't get it, but okay. If you think this is the best use of your time, you go ahead. Your Honor, I think the questions and the responses that I've heard in the discussion, I don't think there's a lot to talk about here. Okay. Well, thank you. The case is signed. You will stand submitted. Yes.
judges: Kozinski, Wardlaw, Bencivengo